Form No. 3 (Pg. 1)

| B 104 (Rev. 2/92) | **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| | |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (if Known) |
|---|---|
| | |

**PARTY** (Check one box only)  ☐ 1 U.S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☐ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**NATURE OF SUIT**
(Check the one most appropriate box only.)

☐ 454 To Recover Money or Property
☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan
☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action

☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523
☐ 459 To determine a claim or cause of action removed to a bankruptcy court

☐ 457 To obtain approval for the sale of both the interest of the estate and of a co-owner in property
☐ 434 To obtain an injunction or other equitable relief
☐ 498 Other (specify)

☐ 424 To object or to revoke a discharge 11 U.S.C. §727
☐ 458 To subordinate any allowed claim or interest except where such subordination is provided in a plan

**ORIGIN OF PROCEEDINGS** (Check one box only.)
☐ 1 Original Proceeding
☐ 2 Removed Proceeding
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another Bankruptcy Court
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| DEMAND | NEAREST THOUSAND $ | OTHER RELIEF SOUGHT | ☐ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
|---|---|
| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING **NO.** |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

**FILING FEE** (Check one box only.)  ☐ FEE ATTACHED  ☐ FEE NOT REQUIRED  ☐ FEE IS DEFERRED

| DATE | PRINT NAME | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| DEHON, INC.,* | Case No. 02-41045 (HJB) |
|  | (Substantively Consolidated) |
| Debtor. |  |
| * The Debtor, formerly named ARTHUR D. LITTLE, INC., changed its name to Dehon, Inc. following the sale of substantially all of its operating assets pursuant to an order of the Bankruptcy Court dated April 29, 2002. |  |
| STEPHEN S. GRAY, AS PLAN ADMINISTRATOR OF DEHON, INC., |  |
| Plaintiff, | Adversary Proceeding No. _____ |
| v. |  |
| O'NEILL PROPERTIES GROUP, L.P., AP CAMBRIDGE PARTNERS, LLC, and AP CAMBRIDGE PARTNERS II, LLC, |  |
| Defendants. |  |

**COMPLAINT TO AVOID AND RECOVER
TRANSFER OF PROPERTY UNDER 11 U.S.C. §§ 544(b) AND 550**

Plaintiff, Stephen S. Gray, the duly-appointed Plan Administrator of Dehon, Inc. ("Plaintiff") (Dehon, Inc. referred to herein as "Dehon"), by and through his undersigned counsel, files this Complaint pursuant to Rule 7001, *et seq*. of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), seeking the avoidance and recovery of a certain transfer made by Dehon without receiving reasonably equivalent value at a time when Dehon was insolvent, or was rendered insolvent thereby, pursuant to Sections

544(b) and 550 of the United States Bankruptcy Code ("Bankruptcy Code"), and Massachusetts General Laws c. 109A, *et seq.*, the Uniform Fraudulent Transfer Act. In support thereof, Plaintiff alleges as follows:

### The Parties

1.       Plaintiff, Stephen S. Gray, is the duly-appointed Plan Administrator of Dehon.

2.       Defendant O'Neill Properties Group, L.P. ("O'Neill Properties") is a Pennsylvania limited partnership with a principal place of business at 700 South Henderson Road, Suite 225, King of Prussia, Pennsylvania and/or 1101 W. Dekalb Pike, Wayne, Pennsylvania.

3.       Defendant AP Cambridge Partners, LLC ("AP Cambridge Partners") is a Delaware limited liability company with a principal place of business at 1101 W. Dekalb Pike, Wayne, Pennsylvania.

4.       Defendant AP Cambridge Partners II, LLC ("AP Cambridge Partners II") is a Delaware limited liability company with its registered address at O'Neill Properties Group, L.P., 395 Arsenal St., Watertown, Massachusetts.

### Jurisdiction and Venue

5.       This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(H) and (O).

6.       Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1409(a) and (c).

GSDOCS-1324289-1

7. This Court has personal jurisdiction over Defendants pursuant to Bankruptcy Rule 7004(f) and because Defendants either transacted and did business with Dehon, a Massachusetts corporation with its principal place of business in Massachusetts, before the Petition Date (as defined below), or because they generally transact business in the state of Massachusetts, or because they have an interest in, use or possess real property in Massachusetts.

## Background

8. On February 5, 2002 (the "Petition Date"), Dehon and certain of its subsidiaries (collectively, the "Initial Debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). In addition, on March 14, 2002, twelve additional affiliates of Dehon commenced their cases in the United States Bankruptcy Court for the District of Massachusetts under Chapter 11 of the Bankruptcy Code (together with the Initial Debtors, the "Debtors").

9. On February 12, 2002, the Delaware Bankruptcy Court transferred venue of the Initial Debtors' bankruptcy cases to the United States Bankruptcy Court for the District of Massachusetts (Western Division) (the "Massachusetts Bankruptcy Court").

10. On or about February 14, 2003, the Court confirmed (the "Confirmation Order") the Modified *Second Amended Plan of Liquidation of Dehon, Inc. (f/k/a Arthur D. Little, Inc.) and Its Debtor Subsidiaries* (the "Dehon Plan"). On February 25, 2003 (the "Effective Date"), the Dehon Plan became effective pursuant to Article IX thereof.

Under the Dehon Plan, all of the assets and liabilities of the Debtors were substantively consolidated as if they were merged with the assets and liabilities of Dehon.[1]

11. Pursuant to the Dehon Plan and Confirmation Order, Plaintiff was appointed the Plan Administrator of Dehon.

12. Pursuant to the Dehon Plan, Plaintiff is authorized, among other things, to investigate, enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all "Rights of Action," including all avoidance actions under Sections 544 through 550 of the Bankruptcy Code.

13. Plaintiff brings this action pursuant to 11 U.S.C. §§ 544(b) and 550, and Mass. Gen. Laws c. 109A, *et seq.*, for the purpose of avoiding certain transfers and recovering the value of such transfers for the benefit of Dehon's estate and creditors.

**Factual Allegations**

14. For more than twenty years, Dehon owned and occupied a 415,000 square foot office park known as "Acorn Park" located on approximately 40 acres of land in Cambridge, Belmont, and Arlington, Massachusetts.

15. As a result of its size and location, in 1999, Acorn Park was one of Dehon's most valuable assets.

16. In or around 1997, Dehon began to evaluate its office and laboratory space needs and explore alternatives for the company.

17. In or around February 1999, representatives of O'Neill Properties approached representatives of Dehon about the sale of Acorn Park and the lease of space

---

[1] By Motion filed simultaneously with this Complaint, Dehon has moved this court to substantively consolidate other non-debtor subsidiaries which may be involved in the transfer at issue.

in an office park O'Neill Properties was developing in Watertown, Massachusetts known as "The Arsenal on the Charles" (the "Arsenal").

18.    At the time O'Neill Properties contacted Dehon, Dehon was in desperate need of a cash infusion.

19.    O'Neill Properties formally offered to purchase Acorn Park on February 24, 1999. On that date, O'Neill Properties' agent, Cushman & Wakefield, sent a letter to Samuel Gallo, in his capacity as General Counsel of Dehon, enclosing an offer from O'Neill Properties to purchase Acorn Park for Twenty Million Dollars ($20,000,000.00). In addition, O'Neill Properties offered to lease Dehon approximately 347,000 square feet at the Arsenal according to the following rent schedule:

| Years 1 – 5: | $22.16 per rentable square foot, NNN |
| Years 6 – 10: | $24.16 per rentable square foot, NNN |
| Years 11 – 15: | $26.36 per rentable square foot, NNN |
| Years 16 – 20: | $28.78 per rentable square foot, NNN |

The offer also contemplated certain allowances for tenant improvements and other incentives.

20.    Dehon responded to O'Neill Properties' proposal on April 2, 1999. Dehon's counter-proposal accepted the purchase price offered by O'Neill Properties, but reduced the rent schedule by $2.00 per rentable square foot. Dehon's counter-proposal was expressly contingent on "approval by the Board of Directors at Arthur D. Little, Inc."

21.    During the next two weeks, Dehon and O'Neill Properties continued to negotiate the terms of the purchase of Acorn Park and the lease of space at the Arsenal. O'Neill Properties addressed all correspondence, including a letter of intent, to Dehon, and Dehon directed all of its correspondence, including its proposed term sheets, to O'Neill Properties.

22. On April 21, 1999, Dehon and O'Neill Properties executed two term sheets – one for the purchase of Acorn Park and one for the lease of the Arsenal (collectively the "Proposals") – indicating their agreement to and acceptance of the terms set forth in the Proposals, which were consistent in all material respects with the terms set forth in the Letter of Intent.

23. The Proposals were expressly contingent on approval of the transactions by the Board of Directors of Dehon.

24. On April 23, 1999, the Board of Directors of Dehon unanimously approved the sale of Acorn Park to O'Neill Properties and the lease of space at the Arsenal in accordance with the terms set forth in the Proposals. In order to effectuate these transactions, the Board voted that

> ..the Chief Executive Officer, General Counsel, or their designees be and each of them acting singly is authorized, empowered, and directed in the name of the corporation, to negotiate, execute, and deliver the Lease and Purchase and Sale Agreement, and any other agreement, documents or instruments required to consummate the transactions at Watertown and Acorn Park, and that said officers or their designees are hereby authorized to take all other actions to effectuate the transactions contemplated thereby as he or she in his or sole discretion deems necessary or appropriate, the taking of any such actions to be conclusive evidence of such officer's authority hereunder.

25. On June 24, 1999, Dehon and O'Neill Properties, by and through their wholly owned subsidiaries, entered into a Real Estate Purchase Agreement for the acquisition of Acorn Park.

26. Simultaneously with the execution of the Real Estate Purchase Agreement, Dehon and a subsidiary of O'Neill Properties executed a lease for the Arsenal.

27. Pursuant to the terms of the Real Estate Purchase Agreement, Dehon caused its subsidiaries that held title to Acorn Park – Arthur D. Little Real Estate

Corporation, Acorn Properties II, Inc., Acorn Properties III, Inc., and Acorn Properties IV, Inc. (collectively, the "Dehon Affiliates"),[2] to transfer all of their right, title and interest in and to Acorn Park (the "Transfer") to AP Cambridge Partners, LLC and AP Cambridge Partners II, LLC (collectively, the "O'Neill Affiliates") in exchange for Twenty Million Dollars ($20,000,000.00).

28. At all times during the negotiations regarding Acorn Park and the Arsenal, Dehon and the Dehon Affiliates held themselves out as a unified entity.

29. Upon information and belief, O'Neill Properties treated Dehon and the Dehon Affiliates as a single entity. At no time did O'Neill Properties or the O'Neill Affiliates rely on the separateness of Dehon and the Dehon Affiliates.

30. O'Neill Properties negotiated and communicated with representatives of Dehon and addressed all correspondence, including its offers, letter of intent and the Proposals, to Dehon, understanding that affiliates of Dehon held title to Acorn Park and would be executing the asset purchase agreement that the parties eventually signed.

31. Moreover, pursuant to the terms of the Real Estate Purchase Agreement, O'Neill Properties wired the Twenty Million Dollar ($20,000,000.00) purchase price directly to Dehon, not the Dehon Affiliates. In fact, the Dehon Affiliates never received any portion of the sale proceeds.

32. At all relevant times, the Dehon Affiliates were under the pervasive control of Dehon.

---

[2] The Dehon Affiliates are among those Plaintiff has moved to substantively consolidate by Motion filed simultaneously with this Complaint.

-7-

33. Dehon did not observe any corporate form or formalities with respect to the Dehon Affiliates.

34. Dehon and the Dehon Affiliates operated from the same location (Acorn Park), maintained consolidated financial statements, and did not differentiate the property owned by each entity.

35. In addition, the Dehon Affiliates did not (i) operate any business other than to hold title to Acorn Park, (ii) receive the cash proceeds of income arising from Acorn Park, (iii) pay their share of overhead or employee related expenses, (iv) maintain any bank accounts in their names, or (v) prepare independent audited financial statements.

36. Furthermore, the officers and directors of Acorn Park were also officers of Dehon and could not make any material decisions without the consent of the directors and/or senior officers of Dehon.

37. Indeed, the Transfer was contingent upon the approval of the Board of Directors of Dehon, not the Dehon Affiliates.

38. Like Dehon and its Affiliates, O'Neill Properties and the O'Neill Affiliates held themselves out as a single entity throughout the negotiations regarding Acorn Park and the Arsenal.

39. At all times during the negotiations, Dehon and the Dehon Affiliates considered O'Neill and the O'Neill Affiliates as a single entity. At no time did Dehon or the Dehon Affiliates rely on the separateness of O'Neill Properties and the O'Neill Affiliates.

-8-

40. Dehon negotiated and communicated with representatives of O'Neill Properties and sent all correspondence to O'Neill Properties.

41. Upon information and belief, at all relevant times, the O'Neill Affiliates were under the pervasive control of O'Neill Properties.

42. J. Brian O'Neill, principal of O'Neill Properties, is the Manager of AP Cambridge Partners, LLC, and the Manager of AP Cambridge Partners II, LLC's Management Company. As such, Mr. O'Neill is authorized to execute corporate documents and those affecting an interest in real property on behalf of the O'Neill Affiliates.

43. In fact, Mr. O'Neill signed the Real Estate Purchase Agreement on behalf of AP Cambridge Partners and AP Cambridge Partners II.

44. In addition, O'Neill Properties and AP Cambridge Partners share an address in Wayne, Pennsylvania, and AP Cambridge Partners II lists as its registered address O'Neill Properties Group, 395 Arsenal Street, Watertown, MA.

45. Acknowledging the substantial identity of the entities on each side of the transaction, the Real Estate Purchase Agreement required that all notices be sent to O'Neill Affiliates care of O'Neill Properties Group, L.P. and to the Dehon Affiliates care of Arthur D. Little, Inc.

46. At the time of the Transfer, Dehon was insolvent within the meaning of 11 U.S.C. §101(32)(A) and the Uniform Fraudulent Transfer Act.

47. On October 8, 1999, Leggatt McCall conducted an appraisal of Acorn Park and opined that the market value of Acorn Park as of February 1, 1999 was Forty Five Million Dollars ($45,000,000.00).

48. Upon information and belief, O'Neill Properties and/or the O'Neill Affiliates sold Acorn Park seventeen months after the Transfer for Sixty Three Million Dollars ($63,000,000.00) without any renovation or improvements made to the property.

49. As a result of the Transfer, Dehon lost more than Twenty Five Million Dollars ($25,000,000.00).

## Count I
### (Constructive Fraudulent Transfer)

50. Plaintiff restates and realleges as if fully set forth herein the allegations of paragraphs 1 through 49.

51. Section 544(b) of the Bankruptcy Code provides that the Plaintiff may avoid any transfer of an interest of Dehon and property or any obligation incurred by Dehon that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under §502 of the Bankruptcy Code or that is not allowable only under §502(e) of the Bankruptcy Code. See 11 U.S.C. §544(b). The Massachusetts Uniform Fraudulent Transfer Act, Mass. Gen. Laws c. 109A, §1, *et seq*., constitutes applicable state law pursuant to which Dehon may avoid the Transfer.

52. More than one creditor holds an unsecured claim allowable under §502 of the Bankruptcy Code against Dehon that arose before the Transfer was made.

53. Dehon did not receive a reasonably equivalent value in exchange for the Transfer. Dehon sold Acorn Park to O'Neill Properties for Twenty Million Dollars ($20,000,000.00). Three months after the Transfer, an independent appraisal valued Acorn Park at Forty Five Million Dollars ($45,000,000.00), and the Defendants sold Acorn Park for Sixty Three Million Dollars ($63,000,000.00) shortly after the Transfer.

54. At the time of the Transfer, Dehon was insolvent, or Dehon became insolvent as a result of the Transfer.

55. Accordingly, the Transfer was fraudulent as to Dehon's creditors, under Mass. Gen. Laws c. 109A, §6, and is avoidable under M.G.L. ch.109A, §8 and §544(b) of the Bankruptcy Code.

## Count II
### (Constructive Fraudulent Transfer)

56. Plaintiff restates and realleges as if fully set forth herein the allegations of paragraphs 1 through 55.

57. Under applicable law, a present or future creditor may recover for a transfer made by the debtor without receiving a reasonably equivalent value in exchange for the transfer if the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

58. More than one creditor holds an unsecured claim allowable under §502 of the Bankruptcy Code against Dehon that arose before or after the Transfer was made.

59. Dehon did not receive a reasonably equivalent value in exchange for the Transfer. Dehon sold Acorn Park to O'Neill Properties for Twenty Million Dollars ($20,000,000.00). Three months after the Transfer, an independent appraisal valued Acorn Park at Forty Five Million Dollars ($45,000,000.00), and the Defendants sold Acorn Park for Sixty Three Million Dollars ($63,000,000.00) shortly after the Transfer.

60. At all times from and after the Transfer, Dehon was engaged in a business for which its assets were unreasonably small.

61. Accordingly, the Transfer was fraudulent as to Dehon's creditors under Mass. Gen. Laws. c. 109A, § 5(a)(2)(i), and is avoidable under M.G.L. c. 109A, § 8 and § 544(b) of the Bankruptcy Code.

## COUNT III
### (Constructive Fraudulent Transfer)

62. Plaintiff restates and realleges as if fully set forth herein the allegations of paragraphs 1 through 61.

63. Under applicable law, a present or future creditor may recover for a transfer made by the debtor without receiving a reasonably equivalent value in exchange for the transfer if the debtor believed, or reasonably should have believed, that it would incur debts beyond its ability to pay as they became due.

64. More than one creditor holds an unsecured claim allowable under §502 of the Bankruptcy Code against Dehon that arose before or after the Transfer was made.

65. Dehon did not receive a reasonably equivalent value in exchange for the Transfer. Dehon sold Acorn Park to O'Neill Properties for Twenty Million Dollars ($20,000,000.00). Three months after the Transfer, an independent appraisal valued Acorn Park at Forty Five Million Dollars ($45,000,000.00), and the Defendants sold Acorn Park for Sixty Three Million Dollars ($63,000,000.00) shortly after the Transfer.

66. When Dehon made the Transfer, it believed, or reasonably should have believed, that it would incur debts beyond its ability to pay as they became due.

67. Accordingly, the Transfer was fraudulent as to Dehon's creditors under Mass. Gen. Laws. c. 109A, §5(a)(2)(ii), and is avoidable under M.G.L. c. 109A, §8 and §544(b) of the Bankruptcy Code.

GSDOCS-1324289-1

## COUNT IV
### (Substantive Consolidation)

68. Plaintiff restates and realleges as if fully set forth herein the allegations of paragraphs 1 through 67.

69. The Dehon Affiliates were at all pertinent times wholly-owned subsidiaries of Dehon.

70. Dehon did not observe any corporate form or formalities with respect to the Dehon Affiliates and exercised absolute and pervasive control over the Dehon Affiliates.

71. The Dehon Affiliates did not maintain separate bank accounts, prepare independent financial statements, or operate any business other than to hold title to Acorn Park.

72. Furthermore, the officers and directors of the Dehon Affiliates, who were also officers of Dehon, could not make any material decision without the consent of the directors and/or the senior officers of Dehon.

73. At all times during the negotiations regarding Acorn Park and the Arsenal, Dehon and the Dehon Affiliates held themselves out as a unified entity.

74. Upon information and belief, O'Neill Properties treated Dehon and the Dehon Affiliates as a single entity. At no time did O'Neill Properties or the O'Neill Affiliates rely on the separateness of Dehon and the Dehon Affiliates.

75. O'Neill Properties sent all communications, including its offers, letter of intent and Proposals to Dehon, and wired the net purchase price directly to Dehon, not the Dehon Affiliates.

76. Moreover, O'Neill Properties understood that the Transfer was contingent upon the approval of the Board of Directors of Dehon.

77. Due to the substantial identity of Dehon and the Dehon Affiliates, in the interest of substantial justice, the Dehon Affiliates should be substantively consolidated with Dehon nunc pro tunc to the Petition Date.[3]

## COUNT V
### (Reverse Piercing of the Corporate Veil)

78. Plaintiff restates and realleges as if fully set forth herein the allegations of paragraphs 1 through 77.

79. Throughout the negotiations regarding the Transfer, there existed substantial identity between Dehon and the Dehon Affiliates, its wholly owned subsidiaries, with substantial disregard of the separate nature of their corporate entities.

80. At all relevant times, the Dehon Affiliates were under Dehon's absolute and pervasive control. The Dehon Affiliates acted as mere instrumentalities, agents, and alter egos of Dehon.

81. Upon information and belief, O'Neill Properties treated Dehon and the Dehon Affiliates as a single entity. At no time did O'Neill Properties or the O'Neill Affiliates rely on the separateness of Dehon and the Dehon Affiliates.

82. In the interest of substantial justice, the corporate veil separating Dehon from the Dehon Affiliates should be pierced and disregarded, and the Defendants should be subject to unlimited liability to Plaintiff for claims related to the Transfer.

---

[3] Simultaneously with the filing of this Complaint, Plaintiff filed a Motion requesting that the Dehon Affiliates be substantively consolidated with Dehon.

-14-

## COUNT VI
### (Piercing the Corporate Veil)

83. Plaintiff restates and realleges as if fully set forth herein the allegations of paragraphs 1 through 82.

84. Throughout the negotiation and execution of the Transfer, there existed substantial identity between O'Neill Properties and O'Neill Affiliates, its wholly owned subsidiaries, with substantial disregard of the separate nature of their corporate entities.

85. Upon information and belief, the O'Neill Affiliates were under O'Neill Properties' absolute and pervasive control. The O'Neill Affiliates acted as mere instrumentalities, agents, and alter egos of O'Neill Properties.

86. Dehon and the Dehon Affiliates considered O'Neill and the O'Neill Affiliates as a single entity. At no time did Dehon or the Dehon Affiliates rely on the separateness of O'Neill and the O'Neill Affiliates.

87. In the interest of substantial justice, the corporate veil separating O'Neill Properties from the O'Neill Affiliates should be pierced and disregarded such that O'Neill Properties bears unlimited liability for creditors' claims related to the Transfer against either entity.

## COUNT VII
### (Recovery of Transfers (11 U.S.C. § 550))

88. Plaintiff restates and realleges as if fully set forth herein the allegations of paragraphs 1 through 87.

89. Defendants were the initial transferees of the Transfers or were the entities for whose benefit the Transfers were made.

-15-

90. The Transfers or the value of the Transfers, to the extent they are avoided pursuant to 11 U.S.C. §§544(b) (applying MGL ch. 109A), 547 or 548, may be recovered by Plaintiff from Defendants pursuant to 11 U.S.C. §550(a).

## **PRAYERS FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants for the benefit of the estates and creditors of Dehon and the Dehon Affiliates, and prays that the Court enter judgment for Plaintiff against the Defendants and grant each of the following remedies:

a. avoidance of the Transfer pursuant to 11 U.S.C. §544(b), Mass. Gen. Laws c. 109A §8(a)(1), or other applicable law;

b. a money judgment in an amount equal to the value of Acorn Park at the time of the Transfer, less the actual purchase price received, pursuant to 11 U.S.C. §550(a), Mass. Gen. Laws c. 109A §9(c) or other applicable law;

c. a money judgment pursuant to 11 U.S.C. §550(a) or other applicable law for dissipation of the transferred property after the Transfer, including without limitation, any decline in the value of such property between the time of the Transfer and the time of the final judgment;

d. a money judgment pursuant to the Uniform Fraudulent Transfer Act or other applicable law for all consequential and incidental damages and expenses incurred by Dehon and/or the Dehon Affiliates with respect to, or as a result of, the Transfer;

GSDOCS-1324289-1

e. substantive consolidation of Arthur D. Little Real Estate Corporation, Acorn Properties II, Inc., Acorn Properties III, Inc., and Acorn Properties IV, Inc. with Dehon.

f. a declaratory judgment that the corporate veil separating Dehon, Inc. from Arthur D. Little Real Estate Corporation, Acorn Properties II, Inc., Acorn Properties III, Inc., and Acorn Properties IV, Inc. is pierced and disregarded such that Defendant bears unlimited liability to Plaintiff for claims related to the Transfer;

g. a declaratory judgment that the corporate veil separating O'Neill Properties Group, L.P. from AP Cambridge Partners, LLC and AP Cambridge Partners II, LLC is pierced and disregarded such that O'Neill Properties Group, L.P. bears unlimited liability to Plaintiff for claims related to the Transfer;

h. an award of prejudgment interest;

i. an award of reasonable attorneys' fees and costs; and

i. such other relief and further as the Court deems just and proper.

Dated: February 4, 2004

By: <u>/s/ Douglas B. Rosner</u>
Alan M. Reisch (BBO# 416160)
Douglas B. Rosner (BBO# 559963)
Laura E. D'Amato (BBO# 641733)
Elizabeth K. Levine (BBO# 658532)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
Tel: (617) 482-1776
Fax: (617) 574-4112

Counsel to the Plan Administrator